Mr. Roger Carlton City Manager of Miami Beach 1700 Convention Center Drive Miami Beach, Florida 33139
Dear Mr. Carlton:
On behalf of the City of Miami Beach, you ask substantially the following question:
May a municipality require that proposed landscape plans, exclusive of those for single family residences, be signed and sealed by a registered landscape architect?
In sum:
A municipality may require that proposed landscape plans be signed and sealed by a registered landscape architect only to the extent that such a requirement does not conflict with state law authorizing architects and engineers to perform services that may fall within the scope of those provided by landscape architects.
You state that the City of Miami Beach is contemplating revising its landscape code provisions to require that proposed landscape plans, excluding those for single family residences, be signed and sealed by a registered landscape architect. The question has been raised, however, whether architects or engineers are authorized by state law to provide landscape architectural services incidental to performing their professional services, and, therefore, may not be precluded by a local ordinance from rendering such services under the above-described circumstances.
Municipalities have been granted broad home rule powers to exercise any power for municipal purposes except when expressly prohibited by law.[1] Moreover, by enactment of the Local Government Comprehensive Planning and Land Development Regulation Act,[2] the Legislature has provided the "necessary statutory direction and basis for municipal and county officials to carry out their comprehensive planning and land development regulation powers, duties, and responsibilities." This office has stated that a municipality may exercise its home rule powers for zoning, subdivision, and planning regulations, provided such regulations are consistent with the requirements of the planning and land development act.[3]
It is well settled that municipal ordinances are inferior to state statutes and, as such, they may not prohibit that which is allowed nor allow that which is prohibited by state law.[4] Accordingly, absent an express constitutional or statutory prohibition, a municipality may exercise its home rule powers to require that proposed landscape plans be signed and sealed by a landscape architect to the extent such a requirement does not conflict with state law.
In section 481.301, Florida Statutes, the Legislature recognizes that the regulation of landscape architecture is necessary
to assure competent landscape planning and design of public and private environments, prevention of contamination of water supplies, barrier-free public and private spaces, conservation of natural resources through proper land and water management practices, prevention of erosion, energy conservation, functional and aesthetically pleasing environmental contributions to man's psychological and sociological well-being, and an enhancement of the quality of life in a safe and healthy environment and to assure the highest possible quality of the practice of landscape architecture in this state.
The term "landscape architecture" is defined to be "professional services," including but not limited to, the following:
(a) Consultation, investigation, research, planning, design, preparation of drawings, specifications, contract documents and reports, responsible construction supervision, or landscape management in connection with the planning and development of land and incidental water areas, including the use of Xeriscape as defined in s. 373.185, where, and to the extent that, the dominant purpose of such services or creative works is the preservation, conservation, enhancement, or determination of proper land uses, natural land features, ground cover and plantings, or naturalistic and aesthetic values; (b) The determination of settings, grounds, and approaches for and the siting of buildings and structures, outdoor areas, or other improvements; (c) The settings of grades, shaping and contouring of land and water forms, determination of drainage, and provision for storm drainage and irrigation systems where such systems are necessary to the purposes outlined herein; and (d) The design of such tangible objects and features as are necessary to the purpose outlined herein.[5]
Thus, any person engaging in any of the above-cited activities must be licensed as provided in Part II, Chapter 481, Florida Statutes. However, there is a specific exception from the licensure requirement for any general contractor certified or registered pursuant to Chapter 489, Florida Statutes, when negotiating for or performing services under a design-build project, as long as the landscape architectural services offered or rendered in connection with the contract are offered and rendered by a landscape architect, an architect, or an engineer.[6]
This exception would protect a general contractor who is providing landscape architecture services as a component of a design-build project from charges of unlicensed practice of landscape architecture under the provisions of Part II, Chapter 481, Florida Statutes. However, the statute's recognition that there are instances in which a licensed architect or a licensed engineer may provide landscape architecture services under a design-build project does not constitute an exclusive prohibition against a municipality requiring that landscape plans be signed and sealed by a licensed landscape architect. This conclusion is reinforced by section 481.231(1), Florida Statutes, stating:
Nothing in this part shall be construed to repeal, amend, limit, or otherwise affect any specific provision of any local building code or zoning law or ordinance that has been duly adopted, now or hereafter enacted, which is more restrictive, with respect to the services of registered architects or registered interior designers, than the provisions of this part. (e.s.)[7]
Section 471.037(1), Florida Statutes, contains a substantially similar provision applicable to local laws affecting the services of registered engineers.[8]
This office in Attorney General Opinion 73-263 (interpreting the predecessor statutes to section 481.231 and section 471.037, Florida Statutes) concluded that a local government's building code could be more restrictive with respect to the services provided by registered architects and registered engineers, only to the extent that the provisions thereof are not in conflict with general law regulating such professions and do not operate to deny any rights granted to such a profession by the licensing statute. Thus, in the case of a statutory exemption from the licensure requirements for an architect or engineer for a specified project, the city could not require such licensure before issuing a building permit. However, this does not preclude the city from requiring the project to meet the building and safety standards that would otherwise be applicable.[9]
A municipal code requiring that proposed landscape plans, exclusive of those for single family residential projects, be signed and sealed by a registered landscape architect would not appear to conflict with the statutory licensing provisions governing landscape architecture. To the extent such a require-ment precludes architects or engineers from providing services they are statutorily authorized to perform, however, the code would be unenforceable as in conflict with state law.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, section 2(b), Art. VIII, State Const. and section166.021(1), Fla. Stat. (1993) and section 166.021(3), Fla. Stat. (1993), providing:
The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except: (a) The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution; (b) Any subject expressly prohibited by the constitution; (c) Any subject expressly preempted to state or county government by the constitution or by general law; and (d) Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution.
[2] Sections 163.3161-163.3215, Fla. Stat. (1993).
[3] See, Ops. Att'y Gen. Fla. 89-51 (1989), 87-20 (1987), 86-34 (1986), and 85-71 (1985).
[4] See, Rinzler v. Carson, 262 So.2d 661, 663 (Fla. 1972) (a municipality cannot forbid what the Legislature has expressly licensed, authorized or required, nor may it authorize what the Legislature has expressly forbidden).
[5] Section 481.303(6), Fla. Stat. (1993).
[6] Section 481.329(3), Fla. Stat. (1993).
[7] This statutory provision recognizes that a building code adopted by a local government may have more stringent standards regarding the sealing of certain structures by a licensed architect, even though the design of such structures is exempted from the provisions of the architects' or engineers' practice acts. Applying this observation to the instant situation, the conclusion contained herein should not be interpreted to prohibit terms of a minimum state building code that may require the seal of a licensed architect or engineer on a certain structure, even though the design of such structure does not require licensure under the architects' or engineers' practice acts.
[8] Section 471.037(1), Fla. Stat. (1993) stating:
Nothing contained in ss. 471.001-471.037 shall be construed to repeal, amend, limit, or otherwise affect any local building code or zoning law or ordinance, now or hereafter enacted, which is more restrictive with respect to the services of registered engineers than the provisions of ss. 471.001-471.037.
[9] See, e.g., Op. Att'y Gen. Fla. 94-84 (1994) (county may not limit the owner/builder exception for construction of single family homes, but may regulate the quality and character of the work performed by the owner/builder to assure compliance with state and local building laws).